

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5265.11
**DATE:** 7/9/99
**SUBJECT:** Correspondence

1.  **[PURPOSE AND SCOPE §540.10.  The Bureau of Prisons encourages correspondence that is directed to socially useful goals.  The Warden shall establish correspondence procedures for inmates in each institution, as authorized and suggested in this rule.]**

Institution guidelines concerning correspondence are to be widely available to staff and inmates through posting on bulletin boards, placement in the institution library, or other appropriate means.

2.  **SUMMARY OF CHANGES.**  This reissuance incorporates new requirements regarding the return address on inmate envelopes.

Other text and procedural improvements have also been made, and are summarized below:

- A section pertaining to pre-trial, holdover, and/or detainee inmates has been added;
- Rules text has been changed to indicate a return address must be used on all outgoing mail; and

3.  **PROGRAM OBJECTIVES.**  The expected results of this program are:

a.  Inmates will be able to send and receive correspondence in accordance with established procedures.

b.  Incoming and outgoing general correspondence will be subject to monitoring, reading, and inspection consistent with established procedures.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

c.  Restrictions on general correspondence will be enforced for an inmate because of misconduct or for classification purposes.

d.  Incoming correspondence deemed inappropriate for inmates will be rejected.

e.  An inmate without funds will be provided a limited amount of postage stamps and mailing materials.

f.  An inmate will be permitted to possess a limited quantity of postage stamps.

g.  An inmate will be permitted to receive funds through the mail.

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

PS 5265.10    Correspondence (12/18/97)

b.  **Directives Referenced**

PS 1315.06    Legal Activities, Inmate (3/5/97)
PS 1320.03    Claims Under the Federal Tort Claims Act
              (1/4/93)
PS 1330.13    Administrative Remedy Program (12/22/95)
PS 1480.03    News Media Contacts (10/7/94)
PS 4500.04    Trust Fund Management Manual (12/15/95)
PS 5100.06    Security Designation and Custody
              Classification Manual (6/7/96)
PS 5266.08    Incoming Publications (8/20/97)
PS 5270.07    Inmate Discipline and Special Housing Units
              (12/29/87)
PS 5370.08    Recreation Programs, Inmate (6/13/94)
PS 5800.07    Inmate Systems Management Manual (12/24/91)
PS 5800.10    Mail Management Manual (11/3/95)
PS 7331.03    Pretrial Inmates (11/22/94)

c.  Rules cited in this Program Statement are contained in 28 CFR 540.2, 540.10-25.

5.  **STANDARDS REFERENCED**

a.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-5D-01

   b.   American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4042, 3-4254, 3-4262, 3-4263, 3-4267, 3-4429, 3-4430, 3-4431, 3-4433, 3-4434, 3-4436

   c.   American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-3D-16, 3E-01, 3E-02, 3E-07, 3E-07-01, 5D-01, 5D-02, 5D-03, 5D-05, 5D-06

   d.   American Correctional Association Standards for Adult Correctional Boot Camp Programs:  1-ABC-3D-01, 3D-02, 3D-05, 5D-01, 5D-02, 5D-03, 5D-05, 5D-06

6.   **PRE-TRIAL, HOLDOVER, AND/OR DETAINEE INMATES.**  Specific sections contained within this Program Statement pertain to either designated inmates or inmates in pre-trial, detainee, or holdover status as indicated.

7.   **[DEFINITIONS §540.2**

   **a.   "General Correspondence" means incoming or outgoing correspondence other than "special mail".  "General Correspondence" includes packages sent through the mail.]**

   The Warden or designee must give prior approval for an inmate to receive or send a package (see the Mail Management Manual).  Procedures pertaining to incoming publications are discussed in the Program Statement on Incoming Publications.

   **[(1)   "Open General Correspondence" means general correspondence which is not limited to a list of authorized correspondents, except as provided in §540.17.]**

   28 CFR 540.17 refers to Section 13 of this Program Statement.

   **[(2)   "Restricted General Correspondence" means general correspondence which is limited to a list of authorized correspondents.**

   **b.   "Representatives of the News Media" means persons whose principal employment is to gather or report news for:**

   **(1)   A newspaper which qualifies as a general circulation newspaper in the community in which it is published.  A newspaper is one of "general circulation" if it circulates among the general public and if it publishes news of a general character of general interest to the public such as news of political, religious, commercial, or social affairs.  A key test to**

determine whether a newspaper qualifies as a "general circulation" newspaper is to determine whether the paper qualifies for the purpose of publishing legal notices in the community in which it is located or the area to which it distributes;

(2)  A news magazine which has a national circulation and is sold by newsstands and by mail subscription to the general public;

(3)  A national or international news service; or

(4)  A radio or television news program, whose primary purpose is to report the news, of a station holding a Federal Communications Commission license.

c.  "Special Mail" means correspondence <u>sent to</u> the following: President and Vice President of the United States, the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement officers, attorneys, and representatives of the news media.]

An inmate is expected to use the special mail privilege responsibly.  Questions concerning alleged abuses of the special mail privilege should be referred to the Office of General Counsel.

["Special Mail" also includes correspondence <u>received from</u> the following:  President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts.  For incoming correspondence to be processed under the special mail procedures (see §§540.18-540.19), the sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail - Open only in the presence of the inmate".]

28 CFR 540.18-19 refers to Sections 15 and 16, respectively, of this Program Statement.

   d. **"Warden"** is defined in 28 CFR 500.1, separately published, as "... the chief executive officer of a U.S. Penitentiary, Federal Correctional Institution, Medical Center for Federal Prisoners, Federal Prison Camp, Federal Detention Center, Metropolitan Correctional Center, or any federal penal or correctional institution or facility. 'Warden' also includes any staff member with authority explicitly delegated by any chief executive officer."

8.  **[MAIL DEPOSITORIES §540.11.  The Warden shall establish at least one mail depository within the institution for an inmate to place outgoing correspondence.  The Warden may establish a separate mail depository for outgoing special mail.  Each item placed in a mail depository must contain a return address (see § 540.12(d).]**

28 CFR 540.12(d) refers to Section 9.d. of this Program Statement.

In Metropolitan Correctional Centers, the Warden shall establish a mail depository to allow an attorney to "hand-deliver" legal mail to the institution (see the Mail Management Manual).  Detention facilities which house pretrial inmates may also establish a mail depository for any attorney to "hand-deliver" special mail.

9.  **[CONTROLS AND PROCEDURES §540.12**

   **a.  The Warden shall establish and exercise controls to protect individuals, and the security, discipline, and good order of the institution.  The size, complexity, and security level of the institution, the degree of sophistication of the inmates confined, and other variables require flexibility in correspondence procedures.  All Wardens shall establish open general correspondence procedures.]**

   Open general correspondence privileges may be given to those inmates who are able to exercise the privileges responsibly and maturely.  Care is to be taken during the orientation period and thereafter to help inmates understand their responsibility for open correspondence.

[b. Staff shall inform each inmate in writing promptly after arrival at an institution of that institution's rules for handling of inmate mail.  This notice includes the following statement:

The staff of each institution of the Bureau of Prisons has the authority to open all mail addressed to you before it is delivered to you.  "Special Mail" (mail from the President and Vice President of the U.S., attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts) may be opened only in your presence to be checked for contraband.  This procedure occurs only if the sender is adequately identified on the envelope and the front of the envelope is marked "Special Mail - Open only in the presence of the inmate."  Other mail may be opened and read by the staff.

If you do not want your general correspondence opened and read, the Bureau will return it to the Postal Service.  This means that you will not receive such mail.  You may choose whether you want your general correspondence delivered to you subject to the above conditions, or returned to the Postal Service.  Whatever your choice, special mail will be delivered to you, after it is opened in your presence and checked for contraband.  You can make your choice by signing Part I or Part II.]

Should the inmate elect not to have his/her general correspondence opened and read or refuses to sign the notice, a copy of refusal will be forwarded to the Mail Room (notice follows this section).

[Part I - General Correspondence to be Returned to the Postal Service

I have read or had read to me the foregoing notice regarding mail. I do not want my general correspondence opened and read. **I REQUEST THAT THE BUREAU OF PRISONS RETURN MY GENERAL CORRESPONDENCE TO THE POSTAL SERVICE.** I understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

_____    _____    _____
        (Name)                          (Reg. No.)              (Date)

Part II - General Correspondence to be Opened, Read, and Delivered

I have read or had read to me the foregoing notice regarding mail. **I WISH TO RECEIVE MY GENERAL CORRESPONDENCE.** I understand that the Bureau of Prisons may open and read my general correspondence if I choose to receive same. I also understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

_____    _____    _____
        (Name)                          (Reg. No.)              (Date)
--------------------------------------------------------------

Inmate _____ _____, refused to sign this
                (Name)            (Reg. No.)
form. He (she) was advised by me that the Bureau of Prisons retains the authority to open and read all general correspondence. The inmate was also advised that his (her) refusal to sign this form will be interpreted as an indication that he (she) wishes to receive general correspondence subject to the conditions in Part II above.

                    _____    _____
                    Staff Member's Signature      Date]

The above notice is included as part of the Acknowledgment of Inmate (BP-407).

PS 5265.11
7/9/99
Page 8

[c.  **Staff shall inform an inmate that letters placed in the U.S. Mail are placed there at the request of the inmate and the inmate must assume responsibility for the contents of each letter.  Correspondence containing threats, extortion, etc., may result in prosecution for violation of federal laws.  When such material is discovered, the inmate may be subject to disciplinary action, the written material may be copied, and all material may be referred to the appropriate law enforcement agency for prosecution.**

d.  **The inmate is responsible for filling out the return address completely on envelopes provided for the inmate's use by the institution.  If the inmate uses an envelope not provided by the institution, the inmate is responsible for ensuring that the envelope used contains all return address information listed on the envelope provided by the institution.]**

Pre-printed envelopes ordered through UNICOR must include a return address consisting of the:

- inmate's name,
- register number,
- name of the institution,
- PO Box (or street address if there is no PO Box), and
- city, state, and zip code.

10.  **[NOTIFICATION OF REJECTIONS §540.13.  When correspondence is rejected, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection.  The Warden shall also give notice that the sender may appeal the rejection.  The Warden shall also notify an inmate of the rejection of any letter addressed to that inmate, along with the reasons for the rejection and shall notify the inmate of the right to appeal the rejection.  The Warden shall refer an appeal to an official other than the one who originally disapproved the correspondence.  The Warden shall return rejected correspondence to the sender unless the correspondence includes plans for or discussion of commission of a crime or evidence of a crime, in which case there is no need to return the correspondence or give notice of the rejection, and the correspondence should be referred to appropriate law enforcement authorities.  Also, contraband need not be returned to the sender.]**

The Warden may not delegate the authority to reject correspondence or sign the notification letters below the level of Associate Warden.

PS 5265.11
7/9/99
Page 9

Section 11.d. of this Program Statement sets forth the bases for determining whether correspondence should be rejected.  Returned Correspondence (BP-327) is used to notify the involved parties of the rejection.  "Nuisance" contraband will be returned to the sender by using the Stamps, Negotiable Instrument & Other Returned to Sender (BP-328).

The Warden is to acknowledge receipt of an appeal from the sender of a rejected letter and is to designate staff to respond to the appeal.  When the Warden makes the initial rejection, a subsequent appeal by a non-inmate sender shall be referred to the Regional Office for review.

Whenever the Warden is doubtful about the propriety of any incoming or outgoing letter or has any questions concerning the interpretation of regulations, the Warden may refer the problem to the Regional Inmate Systems Administrator and/or to Regional Counsel.  In case of rejection, the offending content is to be reproduced and retained for a reasonable period (at least three months), to have it available for review if the rejection is appealed.

11.  **[GENERAL CORRESPONDENCE §540.14**

   **a.  Institution staff shall open and inspect all incoming general correspondence.  Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate.**

   **b.  Except for "special mail," outgoing mail from a pretrial inmate may not be sealed by the inmate and may be read and inspected by staff.**

   **c. (1)  Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(a) through (d) of this section, is sent out unopened and uninspected.  Staff may open a sentenced inmate's outgoing general correspondence:**

        **(a)  If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;**

        **(b)  If the inmate is on a restricted correspondence list;**

**(c)  If the correspondence is between inmates (See §540.17); or]**

28 CFR 540.17 refers to Section 14 of this Program Statement.

**[(d)  If the envelope has an incomplete return address.**

**(2)  Except for "special mail," outgoing mail from a sentenced inmate in a medium or high security level institution, or an administrative institution may not be sealed by the inmate and may be read and inspected by staff.]**

Refer to the Security Designation and Custody Classification Manual for identification of security levels of each institution.

(3)  **Mail Monitoring.**  Each institution shall establish procedures for monitoring incoming and outgoing mail. Institutions may wish to give closer scrutiny to the incoming and outgoing mail of certain inmates, for example, inmates:

- who participated in criminal activity of a sophisticated nature,
- whose crimes involved mail or fraudulent schemes,
- who are considered escape risks, and
- who present management problems.

The staff member designated by the Warden to supervise inmate correspondence may maintain a list of such inmates.  These monitoring procedures may not interfere with the prompt handling of the mail.

(4)  **Reading and Inspection.**  As stated in this section, all incoming general correspondence and outgoing mail in medium, high, and administrative institutions (except "special mail") is subject to random reading by correctional staff.  The objectives to be accomplished in reading incoming or outgoing mail differ from the objectives of inspection.  In the case of **inspection** (to which all incoming general correspondence is subjected), the objective is primarily to detect contraband.  The random **reading** of mail is intended to reveal, for example, escape plots, plans to commit illegal acts, or plans to violate institution rules or other security concerns.

(5)  **Disclosure.**  In the course of reading correspondence a staff member may incidentally learn of intimate information concerning the private lives of inmates or their correspondents. Bureau staff must be sensitive to the fact that most information

in correspondence is of a private nature, and must be handled discreetly.  Unless there is a legitimate correctional concern relating to security, safety, orderly running of the institution, criminal activity, or inmate rehabilitation, the contents of reviewed correspondence should not be revealed to any other person.

**[d.  The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:**

**(1)  Matter which is nonmailable under law or postal regulations;**

**(2)  Matter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption;**

**(3)  Information of escape plots, of plans to commit illegal activities, or to violate Bureau rules or institution guidelines;**

**(4)  Direction of an inmate's business (See §541.13, Prohibited Act No. 408).  An inmate, unless a pre-trial detainee, may not direct a business while confined.**

**This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment.  Thus, for example, an inmate may correspond about refinancing an existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution.]**

§541.13, Prohibited Act No. 408 refers to Chapter 4 of the Program Statement on Inmate Discipline and Special Housing Units.

**[(5)  Threats, extortion, obscenity, or gratuitous profanity;**

**(6)  A code;**

**(7)   Sexually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order; or]**

Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present a special concern for personal safety, security, and good order.  This is particularly true when the subject is an inmate's relative, friend, or acquaintance.  For these reasons, ordinarily, an inmate shall not be permitted to receive through the mail a personal photograph in which the subject is nude, displays genitalia, or female breasts, or when the photo depicts sexually suggestive acts such as intercourse, fellatio, or sodomy.

The exclusion of this, or similar materials shall be determined on the basis of the standard of whether the material would be detrimental to an individual's personal safety or security, or to institution good order, if it were in the inmate's possession.  For purposes of this section, clippings from publications are considered under this rule on correspondence.  For the rule on incoming publications, see the Program Statement on Incoming Publications.

**[(8)   Contraband.   (See §500.1 of this chapter.   A package received without prior authorization by the Warden is considered to be contraband.]**

28 CFR 500.1 is contained in Section 7.d. of this Program Statement.

Multiple copies of printed materials intended for inmate distribution and third-party mailing, is also considered to be contraband.

12.   **[RESTRICTED GENERAL CORRESPONDENCE §540.15**

   **a.   The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification.]**   For the purpose of this restriction, the term classification is used to identify categories of behavior.  **[Determining factors include the inmate's:**

   **(1)   Involvement in any of the activities listed in §540.14(d);]**

28 CFR 540.14(d) is contained in Section 11.d. of this Program Statement.

PS 5265.11
7/9/99
Page 13

**[(2)  Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;**

**(3)  Being a security risk;**

**(4)  Threatening a government official; or**

**(5)  Having committed an offense involving the mail.**

**b.  The Warden may limit to a reasonable number persons on the approved restricted general correspondence list of an inmate.]**

A determination to place an inmate on restricted correspondence is to be made by the unit team at the time of classification or by the Unit Disciplinary Committee (UDC) or Disciplinary Hearing Officer (DHO), when restricted correspondence is necessitated by an infraction of an institution rule.

Action taken by the UDC or DHO as a disciplinary sanction is ordinarily based upon a finding of violation of the correspondence regulations.

**[c.  The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.**

**(1)  Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).]**

Part 541, Subpart B refers to Program Statement on Inmate Discipline and Special Housing Units.

**[(2)  Where there is no incident report, the Warden:**

**(a)  Shall advise the inmate in writing of the reason the inmate is to be placed on restricted general correspondence;**

**(b)  Shall give the inmate the opportunity to respond to the classification or change in classification; the inmate has the option to respond orally or to submit written information or both; and**

**(c)  Shall notify the inmate of the decision and the reasons, and shall advise the inmate that the inmate may appeal the decision under the Administrative Remedy Procedure.**

**d.  When an inmate is placed on restricted general correspondence, the inmate may, except as provided in §§540.16 and 540.17:]**

28 CFR 540.16 and 540.17 refer to Sections 13 and 14, respectively, of this Program Statement.

**[(1)  Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondent is involved in a violation of correspondence regulations, or would be a threat to the security or good order of the institution;]**

The word "spouse" includes a common-law relationship which has previously been established in a state which recognizes this status.  In states that do not, common-law relationship is not considered "immediate family."  For determination of applicable state laws, the Regional Counsel is to be consulted.

**[(2)  Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondent to obtain a release authorizing an investigation; and**

**(3)  Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity.  Correspondence with former business associates is limited to social matters.]**

**Verification Procedures.**  Each year it becomes increasingly difficult to obtain information from law enforcement agencies on proposed correspondents.  For this reason, an attempt is to be made to secure necessary information from other sources, including the inmate, the proposed correspondent, and the U.S. Probation Officer.  Each institution shall develop its own verification procedures depending upon the sophistication of the inmates with whom they are concerned and resources for verification.

A release from the individual in question may be necessary (for example under the Privacy Act) to complete the investigation.  If a release is needed, the inmate shall be responsible for obtaining the release, and shall be permitted to write to the correspondent for this purpose.

PS 5265.11
7/9/99
Page 15

[e.  The Warden may allow an inmate additional correspondence with persons other than those on the inmate's approved mailing list when the correspondence is shown to be necessary and does not require an addition to the mailing list because it is not of an ongoing nature.]

Authorization of these Special Purpose letters shall be the responsibility of the Case Manager or such other staff member as the Warden may designate to supervise inmate correspondence.

13.  [INMATE CORRESPONDENCE WHILE IN SEGREGATION AND HOLDOVER STATUS §540.16

a.  The Warden shall permit an inmate in holdover status (i.e., enroute to a designated institution) to have correspondence privileges similar to those of other inmates insofar as practical.

b.  The Warden shall permit an inmate in segregation to have full correspondence privileges unless placed on restricted general correspondence under §540.15.]

28 CFR 540.15 refers to Section 12 of this Program Statement.

14.  [CORRESPONDENCE BETWEEN CONFINED INMATES §540.17.  An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved.  Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:

a.  Such correspondence at institutions of all security levels may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and

b.  (1)  The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.]

The Warden will be appraised of any unusual circumstances pertaining to a request to correspond for members of the same immediate family or for inmates who are a party or witness in the same legal action.  When denying an inmate's request to correspond, the Unit Manager shall document the reason(s) for the denial.  The approval of such correspondence privileges for both inmates will ordinarily remain in effect even if either inmate is transferred within the Bureau.

**[(2)  The Wardens of both institutions must approve of the correspondence if one of the inmates is housed at a non-federal institution or if approval is being granted on the basis of exceptional circumstances.]**

The Warden shall document a denial or the rationale for approving the correspondence request.

15.  **[SPECIAL MAIL §540.18**

**a.  The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail.  The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail - Open only in the presence of the inmate".]**

Incoming mail meeting the requirements of this rule must be treated in accordance with this rule.  The Warden may, however, treat incoming mail that does not meet all of the requirements for special mail handling in the same fashion as special mail, including opening it in the inmate's presence and inspecting it only for contraband.  For example, mail from the chambers of a Federal judge or from a member of the U.S. Congress should be given special handling even though it does not contain a special mail marking on the envelope.

Similarly, mail from an adequately identified sender which contains markings similar to the phrase "Special Mail - Open only in the presence of the inmate" may also be given special handling.  Examples of similar markings include "Attorney-Client -- Open only in the presence of the inmate," "Legal Mail -- Open only in the presence of the inmate."

**[b.  In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.**

PS 5265.11
7/9/99
Page 17

c. (1) Except as provided for in paragraph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.]

The Warden may set aside special mail boxes for the use of inmates, to facilitate the separation and mailing of outgoing special mail.

[(2) Special mail shall be screened in accordance with the provisions of paragraph (c)(2)(c) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.

(a) An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).

(b) The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted special mail status.

(c) An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to staff for inspection. Staff shall inspect the special mail material and packaging, in the presence of the inmate, for contraband. If the intended recipient of the special mail has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. The inmate must then seal the special mail material in the presence of staff and immediately give the sealed special mail material to the observing staff for delivery. Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.

(d)  The Warden shall review an inmate's restricted special mail status at least once every 180 days.  The inmate is to be notified of the results of this review.  An inmate may be removed from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the intended recipient.

(e)  An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.

d.  Except for special mail processed in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail:

"The enclosed letter was processed through special mailing procedures for forwarding to you.  The letter has neither been opened nor inspected.  If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification.  If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."]

The stamp is to include, above the statement, the name and address of the institution and space for the date to be entered.

16.  [LEGAL CORRESPONDENCE §540.19

a.  Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter.  The inmate may be asked to sign as receiving the incoming legal mail.  This paragraph applies only if the sender has marked the envelope as specified in §540.18.]

28 CFR 540.18 refers to Section 15 of this Program Statement.

Staff are expected to develop a master log containing the above information.  The inmate may be requested (but is not required) to sign the log, thereby indicating the inmate's receipt of the incoming legal mail.  If the inmate refuses, staff shall note this refusal in the log.

**[b.  The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail - Open only in the presence of the inmate".**

**Legal mail shall be opened in accordance with special mail procedures (see §540.18).]**

28 CFR 540.18 refers to Section 15 of this Program Statement.

**[c.  Grounds for the limitation or denial of an attorney's correspondence rights or privileges are stated in part 543, subpart B.  If such action is taken, the Warden shall give written notice to the attorney and the inmate affected.]**

Part 543, Subpart B refers to the Program Statement on Inmate Legal Activities.

Any violation of the attorney/client correspondence privilege is to be referred to Regional Counsel, who, in conjunction with the Office of General Counsel, may restrict the inmate and/or attorney from further attorney/client correspondence privileges under this section.

**[d.  In order to send mail to an attorney's assistant or to a legal aid student or assistant, an inmate shall address the mail to the attorney or legal aid supervisor, or the legal organization or firm, to the attention of the student or assistant.]**

Refer to the Program Statement on Inmate Legal Activities for specific information concerning Bureau recognition of an attorney's assistant or legal aid student assistant.

**[e.  Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section, and must be marked on the front of the envelope as being mail from the attorney or from the legal aid supervisor.]**

PS 5265.11
7/9/99
Page 20

17.  **[INMATE CORRESPONDENCE WITH REPRESENTATIVES OF THE NEWS MEDIA §540.20**

**a.  An inmate may write through "special mail" to representatives of the news media specified by name or title (see §540.2(b)).]**

28 CFR 540.2(b) refers to Section 7.b. of this Program Statement.

All properly identified and labeled correspondence from an inmate who is not on restricted mail status to qualifying representatives of the news media shall be sealed and forwarded without inspection, directly and promptly.  Properly identified and labeled correspondence from an inmate on restricted special mail status shall also be forwarded promptly, but is sealed and may be subject to inspection in accordance with the procedures noted above (see Section 15.c.(2)(c)).  If there is doubt as to whether a representative qualifies, the institution may contact the Bureau's Public Information Officer in the Central Office.

**[b.  The inmate may not receive compensation or anything of value for correspondence with the news media.  The inmate may not act as reporter or publish under a byline.**

**c.  Representatives of the news media may initiate correspondence with an inmate.  Staff shall open incoming correspondence from representatives of the media and inspect for contraband, for its qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to Bureau regulations.]**

Refer to the Program Statement on News Media Contacts regarding rules on other aspects of contact with news media.

18.  **[PAYMENT OF POSTAGE §540.21**

**a.  Except as provided in paragraphs (d), (e), (f), and (i) of this section, postage charges are the responsibility of the inmate.  The Warden shall ensure that the inmate commissary has postage stamps available for purchase by inmates.]**

Mailroom staff should obtain postage rate charts from the local servicing post office.  These charts should be placed in areas where inmates ordinarily have access, e.g. mailroom, housing units.

    (1)  **Postage Sold by Commissary.**  The inmate commissary must have available sufficient stamp denominations to allow mailing of letters in excess of one ounce, but not requiring an additional first class stamp.

    (2)  **Purchase Limitation.**  The Warden shall issue local guidelines, which shall ordinarily limit an inmate's commissary purchase per commissary visit, to 60 postage stamps (of the denomination for first class, domestic, one ounce mailing), or the equivalent; an exception may be made where such visits are limited to once per week, or less, in which case the Warden may authorize an additional purchase of postage stamps.

    (3)  **Inmate Possession of Postage Stamps.**  The Warden shall issue local guidelines, limiting an inmate's possession of stamps at one time to no more than 60 postage stamps (of the denomination for first class, domestic, one ounce mailing), or the equivalent, except where commissary visits are limited to once per week, or less, in which case the Warden may authorize possession of stamps by any inmate to a specified amount in excess of this limit.

    (4)  **Approval for Additional Purchases.**  An inmate may be authorized to purchase (per commissary visit) and/or possess postage in excess of 60 postage stamps (of the denomination for first class, domestic, one ounce mailing), or the equivalent, only upon approval of the Associate Warden or a person of equivalent level.  This authority may not be delegated below the Unit Manager level.

  **[b.  Writing paper and envelopes are provided at no cost to the inmate.  Inmates who use their own envelopes must place a return address on the envelope (see § 540.12(d)).]**

  28 CFR 540.12(d) refers to Section 9.d. of this Program Statement.

  **[c.  Inmate organizations will purchase their own postage.**

  **d.  An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage stamps for such mailing.  To prevent abuses of this provision, the Warden may impose restrictions on the free legal and administrative remedy mailings.]**

    (1)  To prevent abuses of Bureau directives regarding purchase of postage, Wardens shall:

(a)  Provide an inmate who has neither funds nor postage up to five postage stamps (of the denomination for first-class, domestic, one ounce mailing) or the equivalent each week, for legal mail or Administrative Remedy filings;

(b)  Require an inmate who has, for at least two separate months, depleted his or her commissary account, obtained Government-paid postage stamps, and then restored money to the account to complete the appropriate form for reimbursement Request for Withdrawal of Inmate's Personal Funds, (BP-199) for the amount of postage given for legal mail or Administrative Remedy filings;

Commissary staff shall hold the Request for Withdrawal of Inmate's Personal Funds form (BP-199) and charge it against the inmate's account as soon as the inmate has funds (see the Trust Fund Management Manual); and

(c)  Allow an inmate to purchase sufficient postage for legal mail or Administrative Remedy mailings.  The amount of purchase may not exceed the limit for postage purchases.

(2)  The Associate Warden or a person of equivalent level shall review and make a final determination whether the inmate is to receive postage under any of the conditions of this subsection.  In making this determination, an inmate without funds means an inmate without sufficient commissary balance to purchase a postage stamp sufficient for first-class, one ounce domestic mailing.  This authority may not be delegated below the Unit Manager level.

**[e.  When requested by an inmate who has neither funds nor sufficient postage, and upon verification of this status by staff, the Warden shall provide the postage stamps for mailing a reasonable number of letters at government expense to enable the inmate to maintain community ties.  To prevent abuses of this provision, the Warden may impose restrictions on the free mailings.]**

Five letters per month are suggested as a reasonable allowance in most circumstances.  To prevent abuses of this policy, the Warden may require reimbursement as provided in Section 18.d.(1)(b).  The Associate Warden or a person of equivalent level (not to be delegated below the Unit Manager level) shall review and make a final determination on whether the inmate is to receive postage under the conditions of this subsection.

In making this determination, an inmate without funds means an inmate without sufficient commissary balance to purchase a

PS 5265.11
7/9/99
Page 23

postage stamp sufficient for first-class, one ounce domestic
mailing or postage for half-ounce international air mail for an
inmate whose community ties require such foreign correspondence.

   **[f.  Mailing at government expense is also allowed for
necessary correspondence in verified emergency situations for
inmates with neither funds nor sufficient postage.]**

   The Associate Warden or a person of equivalent level shall
review and make a final determination on whether the inmate is to
receive postage stamps under any of the conditions in this
subsection.  This authority may not be delegated below the Unit
Manager level.

   **[g.  Inmates must sign for all stamps issued to them by
institution staff.]**

   A separate log is to be kept for this purpose.

   **[h.  Mail received with postage due is not ordinarily accepted
by the Bureau of Prisons.]**

   The mail officer shall refuse all postage due mail.  However,
if such mail is tendered to the mail officer without collection
of postage due, the mail is to be processed without further
collection action (see the Mail Management Manual).

   **[i.  Holdovers and pre-trial commitments will be provided a
reasonable number of stamps for the mailing of letters at
government expense.]**

   Three letters per week is suggested as a reasonable allowance
in most circumstances.  Commissary purchase of postage shall also
be available to pre-trial inmates.  For holdovers, additional
government-furnished postage stamps may be allowed for special
needs demonstrated by the inmate.

   **[j.  Inmates may not be permitted to receive stamps or stamped
items (e.g., envelopes embossed with stamps, postal cards with
postage affixed) other than by issuance from the institution or
by purchase from commissary.]**

   All stamps and stamped items sent into the institution shall be
returned to the sender with an accompanying letter, Stamps,
Negotiable Instrument & Other Returned to Sender (BP-328)
indicating the reason for return.  A copy of the letter will be
placed with the inmate correspondence for delivery to the inmate.

See the Program Statement, Mail Management Manual for further information.

k.  The institution's Business Manager is responsible for the purchase and security of stamps purchased by the Bureau for issue to inmates in accordance with Section 18.d.

l.  The Business Manager is responsible for conducting the quarterly audits.

19.  **[SPECIAL POSTAL SERVICES §540.22.]**  The information contained in this section on special postal services was extracted from the Mail Management Manual.  That policy should be reviewed to obtain more detailed information on these and related areas relating to mail management.

**[a.  An inmate, at no cost to the government, may send correspondence by registered, certified, or insured mail, and may request a return receipt.**

**b.  An inmate may insure outgoing personal correspondence (e.g., a package containing the inmate's hobbycrafts) by completing the appropriate form and applying sufficient postage.]**

The Authorization to Mail Inmate Package (BP-329) is to be used.

**[(1)  In the event of loss or damage, any claim relative to this matter is made to the U.S. Postal Service, either by the inmate or the recipient.  The U.S. Postal Service will only indemnify a piece of insured mail for the actual value of an item, regardless of declared value.]**

When an inmate decides that a claim is necessary for an incoming piece of insured mail, the inmate should be advised that the mailer is the most appropriate person to file the claim with the U.S. Postal Service.

**[(2)  Inmate packages forwarded as a result of institution administration are considered official mail, except as otherwise specified (for example, hobbycraft articles mailed out of the institution).  Official mail is not insured.  If such an item is subsequently lost or damaged in the mail process the inmate may file a tort claim with the Bureau of Prisons (see part 543, subpart C of this chapter).]**

Such packages are forwarded as official mail at government expense.  If documentation clearly indicates that the package

left Bureau control and the item was therefore lost or damaged by the U.S. Postal Service in the mail process (or mailed via a contract mail provider), the inmate is to be instructed to file a tort claim with the U.S. Postal Service (or directly with the contract mail provider) (see the Program Statement on Claims Under the Federal Tort Claims Act). Hobbycraft articles are discussed in the Program Statement on Inmate Recreation Programs.

**[c. Certified mail is sent first class at the inmate's expense.]**

The inmate must pay for basic postage, the costs of certification, and the costs of a return receipt (if requested).

**[d. An inmate may not be provided such services as express mail, COD, private carriers, or stamp collecting while confined.]**

20.  **[INMATE FUNDS RECEIVED THROUGH THE MAILS §540.23.**

**a. An inmate, upon completing the appropriate form, may receive funds from family or friends or, upon approval of the Warden, from other persons for crediting to the inmate's trust fund account.]**

Section 2 of the Acknowledgment of Inmate (BP-407) contains an authorization for disposition of funds. The inmate ordinarily completes this form upon initial entry into Bureau custody.

**[b. An inmate is responsible for advising persons forwarding the inmate funds that all negotiable instruments, such as checks and money orders, should give both the inmate's name and register number, thereby helping to ensure a deposit to the proper inmate's account. Negotiable instruments not accepted because they are incorrectly prepared will be returned to the sender, with a letter of explanation. A copy of this letter will be sent to the inmate.]**

The Stamps, Negotiable Instrument and Other Returned to Sender form (BP-328) is the appropriate form to use to return unidentifiable funds. However, if the envelope clearly indicates the inmate's name and register number, the monies will be accepted.

PS 5265.11
7/9/99
Page 26

**[c.  An inmate may not receive through the mail unsolicited funds, nor may the inmate solicit funds or initiate requests which might result in the solicitation of funds from persons other than as specified in paragraph (a) of this section.**

**d.  An inmate may not receive through the mail funds for direct services provided by the government, such as medical services.]**

Because the availability of services in certain areas has been set by Congress, the Bureau should not authorize the acceptance of funds specifically designated for these purposes.

e.  All Bureau staff should be alert to unusual activity concerning funds being received for posting to an inmate's account or funds being mailed out of the institution.  For example, mail room staff, accounting technicians, unit staff and others, to the extent possible, should be alert to, and should notify the Unit Manager when an inmate receives a large amount of money either in a lump sum or over a short period of time or has unusual activity in the inmate's account.  The Unit Manager is to determine whether an appropriate reason exists for such activity or if a further referral to the Captain is necessary.

21.  **[RETURNED MAIL §540.24.  Staff shall open and inspect for contraband all undelivered mail returned to an institution by the Post Office before returning it to the inmate.  The purpose of this inspection is to determine if the content originated with the inmate sender identified on the letter or package; to prevent the transmission of material, substances, and property which an inmate is not permitted to possess in the institution; and to determine that the mail was not opened or tampered with before its return to the institution.  Any remailing is at the inmate's expense.  Any returned mail qualifying as "special mail" is opened and inspected for contraband in the inmate's presence.]**

22.  **[CHANGE OF ADDRESS AND FORWARDING OF MAIL FOR INMATES §540.25**

**a.  Staff shall make available to an inmate who is being released or transferred appropriate Bureau of Prisons and U.S. Postal Service forms for change of address.]**

(1)  A U.S. Postal Service "Change of Address" kit(s) shall be available to each inmate being transferred so that the inmate

may notify correspondents of a change of address. (**Note:** The "kit" is a U.S. Postal form notice to publishers, business, correspondents, etc.; it is **not** a notification to the U.S. Postal Service.

(2) Institution staff shall obtain supplies of these Postal Service kits from the servicing U.S. postal facility. These kits are to be maintained in Receiving and Discharge and the Mail Room for inmates departing the institution.

 **[b.  Inmates are responsible for informing their correspondents of a change of address.**

   **c.  Postage for mailing change of address cards is paid by the inmate.**

   **d.  Except as provided in paragraphs (e) through (g) of this section, all mail received for a released or transferred inmate will be returned to the U.S. Postal Service for disposition in accordance with U.S. Postal Service regulations.**

   **e.  Staff shall use all means practicable to forward special mail.]**

The Mail Management Manual provides more detailed instructions on the forwarding of inmate special mail.

   **[f.  Staff shall forward inmate general correspondence to the new address for a period of 30 days.]**

  Inmate general mail (as opposed to special mail) shall be forwarded to the new address for a period of 30 days. General mail shall be forwarded to the address in the SENTRY database.

  After the 30 day period, general mail received shall be returned to the sender with the notation "Not at this address-return to sender."

   **[g.  Staff shall permit an inmate released temporarily on writ to elect either to have general correspondence held at the institution for a period not to exceed 30 days, or returned to the U.S. Postal Service for disposition.]**

  Disposition of General Correspondence While Inmate is Released Temporarily on Writ (BP-398) is the appropriate form.

PS 5265.11
7/9/99
Page 28

**[(1)  If the inmate refuses to make this election, staff at the institution shall document this refusal, and any reasons, in the inmate's central file.  Staff shall return to the U.S. Postal Service all general correspondence received for such an inmate after the inmate's departure.]**

The refusal is documented on the Disposition of General Correspondence While Inmate is Released Temporarily on Writ (BP-398).

**[(2)  If the inmate does not return from writ within the time indicated, staff shall return to the U.S. Postal Service all general correspondence being held for that inmate for disposition in accordance with postal regulations.]**

23.  **INSTITUTION SUPPLEMENT.**  Upon receiving this Program Statement, each institution is to revise and update its Institution Supplement (IS) and forward a copy to the Regional Correctional Programs Administrator in its Regional Office.  The IS is to include:

- Designation of a staff member to supervise inmate correspondence.

- Procedures for monitoring incoming and outgoing mail including inspection and reading of mail, especially mail to and from particular inmates.

- Authorization of special purpose letters.

- Use of a master log to note the receipt and inmate acknowledgment of incoming legal mail.

- Limitations on the overall amount of postage stamps an inmate may possess as well as single purchases of such stamps.

- Restrictions on free legal and administrative remedy mailings.

/s/

Kathleen Hawk Sawyer
Director