

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5266.10
**DATE:** 1/10/2003
**SUBJECT:** Incoming Publications

1. **[PURPOSE AND SCOPE § 540.70. Except when precluded by statute (see § 540.72), the Bureau of Prisons permits an inmate to subscribe to or to receive publications without prior approval and has established procedures to determine if an incoming publication is detrimental to the security, discipline, or good order of the institution or if it might facilitate criminal activity. The term publication, as used in this subpart, means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, newspaper, plus such other materials addressed to a specific inmate such as advertising brochures, flyers, and catalogs.]**

Section 7 of this Program Statement contains procedures to implement Sec. 615 of The Commerce, Justice, State Appropriations Act of 2000 (P.L. 106-113) (hereinafter referred to as "the Ensign amendment").

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. Inmates will be permitted to receive and retain publications which do not threaten security, good order, or discipline of the institution or that may facilitate criminal activity, or are otherwise prohibited by law.

   b. Publications determined detrimental to the security, good order, or discipline of the institution or that may facilitate criminal activity, or are otherwise prohibited by law, will be excluded from Bureau facilities.


**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

Case 1:06-cv-01031-RWR     Document 30-8     Filed 05/31/2007     Page 2 of 13

```
                                                      PS 5266.10
                                                      1/10/2003
                                                      Page 2
```

   c. A safer environment for staff and inmates will be provided by strengthening procedures designed to prevent the introduction of contraband.

3. **DIRECTIVES AFFECTED**

   a. **Directive Rescinded**

      PS 5266.09   Incoming Publications (7/29/99)

   b. **Directives Referenced**

```
      PS 1330.13   Administrative Remedy Program (12/22/95)
      PS 1350.02   Donations, Acceptance of (6/29/98)
      PS 5265.11   Correspondence (7/9/99)
      PS 5360.08   Religious Beliefs and Practices (5/25/01)
      PS 5580.06   Personal Property, Inmate (7/19/99)
      PS 5800.10   Mail Management Manual (11/3/95)
```

   c. Rules cited in this Program Statement are contained in 28 CFR 540.70 through 540.72.

4. **STANDARDS REFERENCED**

   a. American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-5D-01

   b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4432

   c. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-5D-04

   d. American Correctional Association Standards for Adult Correctional Boot Camp Programs:  1-ABC-5D-04

5. **MCC/MDC/FDC/FTC APPLICATION.** Procedures in this Program Statement apply to Metropolitan Correctional Centers, Metropolitan Detention Centers, Federal Detention Centers, and Federal Transportation Centers, all of which are referred to as "administrative institutions" for the purposes of this Program Statement.

6. <u>**PROCEDURES**</u> **§ 540.71**

 **[a. (1) At all Bureau institutions, an inmate may receive hardcover publications and newspapers only from the publisher, from a book club, or from a bookstore.**

The sender's address shall be clearly identified on the outside of the package.

**(2)   At medium security, high security, and administrative institutions, an inmate may receive softcover publications (for example, paperback books, newspaper clippings, magazines, and other similar items) only from the publisher, from a book club, or from a bookstore.**

**(3)   At minimum security and low security institutions, an inmate may receive softcover publications (other than newspapers) from any source.**

**(4)   The Unit Manager may make an exception to the provisions of paragraphs (a)(1) and (2) of this section if the publication is no longer available from the publisher, book club, or bookstore.  The Unit Manager shall require that the inmate provide written documentation that the publication is no longer available from these sources.  The approval of any request for an exception is to be documented, in writing, on an Authorization to Receive a Package which will be used to secure the item.**

**[b.  The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.  The Warden may not reject a publication solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant.  Publications which may be rejected by a Warden include but are not limited to publications which meet one of the following criteria:**

**(1)   It depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;**

**(2)   It depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of Bureau of Prisons institutions;**

**(3)   It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;**

**(4)   It is written in code;**

**(5)   It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;**

**(6)　It encourages or instructs in the commission of criminal activity;**

**(7)　It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.]**

Only the Warden may reject an incoming publication.  In the Warden's absence, only the Acting Warden may perform this function.

Section 7 of this Program Statement contains procedures to implement the Ensign Amendment.  In that Section, "sexually explicit" and "nudity" are defined in terms of pictorial depictions only.  Publications not subject to return under Section 7 (for example, material which does not meet a definition in that section) are still subject to rejection under this section.

To assist staff in determining which materials may pose the type of threat which warrants exclusion, the following guidelines are given.

　　(a)　A Warden may determine that sexually explicit material of the following types is to be excluded, as potentially detrimental to the security and good order, or discipline of the institution, or as facilitating criminal activity:

- Sado-masochistic
- Bestiality
- Involving children

(b)　Additionally:

- The Warden must prohibit a sexually explicit publication if it is determined to pose a threat to the institution or is contrary to law.  Child pornography materials, which are prohibited by law, are examples.

- Sexually explicit material does not include material of a news or information type.  Publications concerning research or opinions on sexual, health, or reproductive issues, or covering the activities of gay rights organizations or gay religious groups, for example, should be admitted unless otherwise a threat to legitimate institution interests.

- Literary publications should not be excluded, solely because of homosexual themes or references, if they are not sexually explicit in a manner which threatens legitimate institution interests.

- Sexually explicit material may nonetheless be admitted if it has scholarly value, or general social or literary value.

**[c.  The Warden may not establish an excluded list of publications.  This means the Warden shall review the individual publication prior to the rejection of that publication.  Rejection of several issues of a subscription publication is not sufficient reason to reject the subscription publication in its entirety.**

**d.  Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it.  The notice must contain reference to the specific article(s) or material(s) considered objectionable.  The Warden shall permit the inmate an opportunity to review this material for purposes of filing an appeal under the Administrative Remedy Program unless such review may provide the inmate with information of a nature which is deemed to pose a threat or detriment to the security, good order or discipline of the institution or to encourage or instruct in criminal activity.]**

In questionable cases, institution staff should consult with legal staff.

**[e.  The Warden shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter.  The Warden shall advise the publisher or sender that he may obtain an independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter.  The Warden shall return the rejected publication to the publisher or sender of the material unless the inmate indicates an intent to file an appeal under the Administrative Remedy Program, in which case the Warden shall retain the rejected material at the institution for review.  In case of appeal, if the rejection is sustained, the rejected publication shall be returned when appeal or legal use is completed.]**

See Notification to Inmate and Publisher/Sender of **Rejected** Publication (Attachment A) for a sample notification to inmate and publisher/sender.

- The Warden must retain the rejected publication for 20 days from the date that the inmate is sent written notification of the rejection.

- This 20-day period is to allow the inmate the opportunity to file an appeal under the Administrative Remedy Program. If the inmate does not file an appeal within 20 days, the rejected publication may be returned to the publisher.

- If the inmate does file an appeal, the Warden must retain the rejected publication at the institution.

- The rejected publication or the offensive portion of it must be reviewed prior to a staff response being prepared for the BP-9 or, when applicable, for a BP-10 and/or BP-11.

The regional office and Central Office should not respond to a BP-10 or BP-11 appeal of a rejected publication without first reviewing either the rejected publication or a copy of the offensive portion of it.

**[f. The Warden may set limits locally (for fire, sanitation or housekeeping reasons) on the number or volume of publications an inmate may receive or retain in his quarters. The Warden may authorize an inmate additional storage space for storage of legal materials in accordance with the Bureau of Prisons procedures on personal property of inmates.]**

7. **STATUTORY RESTRICTIONS REQUIRING RETURN OF COMMERCIALLY PUBLISHED INFORMATION OR MATERIAL WHICH IS SEXUALLY EXPLICIT OR FEATURES NUDITY § 540.72.** The Ensign amendment states:

> "**None of the funds made available in this Act to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal Official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity.**"

- Procedures for this section affect those publications received on or after **August 28, 1999.** Publications distributed/authorized prior to that date shall be retained and transferred in accordance with the Program Statement on Inmate Personal Property.

**[a. When commercially published information or material may not be distributed by staff or made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity), the Warden or designee shall return the information or material to the publisher or sender. The Warden or designee shall advise the publisher or sender that an independent review of the decision may be obtained by writing to the Regional Director within 20 days of receipt of the notification letter. Staff shall provide the inmate with written notice of the action.]**

(1) The Warden's authority to return publications prohibited under this section may be delegated to Mail Room staff.

(2) Mail Room staff are to return publications found to be non-distributable on the basis of the definitions listed in subsection (b) below.

(3) The publications must be returned along with the appropriate attachment.

(4) Ordinarily, the outside cover is to be used to assess content or the need for further review.

(5) Non-distributable publications may be returned to the sender or publisher in bulk annotating the number of returned copies (see Notification to Publisher of **Return** of Publication (Attachment B)).

(6) Materials extracted, photocopied, or clipped from such publications must also be returned to the sender with a Notification to Sender of **Return** of Materials (Attachment C).

(7) Under subsection (a) of this section, there is no need to delay the return of non-distributable publications or materials even when an inmate files an appeal under the Administrative Remedy Program because the statutory restriction on making the material available precludes any inmate review of the material.

Case 1:06-cv-01031-RWR     Document 30-8     Filed 05/31/2007     Page 8 of 13

PS 5266.10
1/10/2003
Page 8

    (8)  Inmates are to be notified via use of the Notification to Inmate of **Return** of Publication or Materials (Attachment D).

    (9)  Although the publication or material is to be returned, the Warden is to insure that a copy of the publication cover and one page of the banned information or material is copied and retained at the institution in the event of a subsequent appeal by the inmate or publisher/sender.

Inmates may use the Administrative Remedy Program to appeal return of materials under this section.  However, insofar as the Ensign amendment prohibits the Bureau from distributing the material, inmates may not review copies of returned materials in connection with their administrative remedy filings.

The Warden needs make only one copy of the retained, statutorily prohibited information, even if that publication is received by many inmates.

- For example, if 20 inmates receive the April 1999 publication of XYZ, and that publication cannot be made available under Section 7., only one set of the materials needs to be retained.

- A copy of the notification sent to each inmate would then be attached to the retained material.

[b.  <u>Definitions</u>.  **For the purpose of this section:**

    **(1)  <u>Commercially published information or material</u> means any book, booklet, pamphlet, magazine, periodical, newsletter, photograph or other pictorial depiction, or similar document, including stationery and greeting cards, published by any individual, organization, company, or corporation which is distributed or made available through any means or media for commercial purposes.  This definition includes any portion extracted, photocopied, or clipped from such items.**

    **(2)  <u>Nudity</u> means a pictorial depiction where genitalia or female breasts are exposed.**

    **(3)  <u>Features</u> means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues.  Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.]**

The following are examples of commercial publications which, based on current practices of the publisher, may be distributed to inmates even though they may contain nudity because the publication does not **feature** nudity as defined above:

- National Geographic
- Our Body, Our Selves
- Sports magazine swimsuit issues
- Lingerie catalogs

Any publication may change a single issue or its general policies and practices at any time which would allow it to become acceptable or non-acceptable for distribution. The above examples are guidelines only and are subject to change.

**[(4) Sexually explicit means a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation.]**

For purposes of this section, written text in the publication does not qualify a publication as sexually explicit.

Publications with sexual content which are not returned under these procedures are still subject to rejection through application of the procedures in Section 6.b.(7) of this Program Statement.

For example, publications which:

- contain sexually explicit text,
- feature sado-masochism,
- feature bestiality, or
- involve children

may not meet the definitions in this Section for "sexually explicit" or "nudity," but may be considered detrimental to the security and good order of the institution, under Section 6.b.(7).

/s/
Kathleen Hawk Sawyer
Director

```
                                                        PS 5266.10
                                                        1/10/2003
                                                        Attachment A
```

NOTIFICATION TO INMATE AND PUBLISHER/SENDER OF **REJECTED**
PUBLICATION (TO BE USED WHEN REJECTING A PUBLICATION UNDER
SECTION 6.a. - 6.e. OF THIS PROGRAM STATEMENT)

Inmate: _____

Register Number: _____

Institution: _____

RE: _____ Issue: _____

The above named publication/material from [publisher/sender name] has been rejected in accordance with the Bureau's Program Statement on Incoming Publications (PS 5266.10), which provides in part:

> **A publication may be rejected only if it determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.**

The above named publication has been rejected because [provide reference to the specific article(s) or material(s) considered objectionable and the reason(s) for the decision to reject].

A copy of this notification has been sent to the publisher/sender who may obtain an independent review of this rejection by writing to the Warden [name, address] within twenty (20) days of receipt of that copy.

_____              _____
Warden                              Date

cc: [Publisher/Sender name and address]

```
                                                        PS 5266.10
                                                         1/10/2003
                                                      Attachment B
```

NOTIFICATION TO PUBLISHER OF **RETURN** OF PUBLICATION
(TO BE USED WHEN RETURNING A PUBLICATION UNDER SECTION 7.a.(3)
OF THIS PROGRAM STATEMENT)


[Date]



XXX Enterprises
Box 2345
ANYTOWN, STATE ZIP

Re: XXX Magazine, December '99 Issue

The above mentioned publication was received addressed to inmate(s) confined in the custody of the Federal Bureau of Prisons. This publication is being returned in accordance with the Bureau of Prisons appropriations act, formerly known as the Ensign Amendment, which states:

> **None of the funds made available in this Act to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity.**

The enclosed publication(s) contain(s) sexually explicit information or material or features nudity and is being returned to you as explained above. If you desire an independent review of this action you may write Regional Director [Name, Address] within 20 days of receipt of this letter.


Sincerely,



Warden

```
                                                      PS 5266.10
                                                      1/10/2003
                                                      Attachment C
```

NOTIFICATION TO SENDER OF **RETURN** OF MATERIALS
(TO BE USED WHEN RETURNING A PUBLICATION UNDER SECTION 7.a.(4) OF THIS PROGRAM STATEMENT)

[Date]


John Doe
123 Anywhere St.
ANYTOWN, STATE ZIP

Re: Return of Materials

The above mentioned material(s) was received addressed to inmate(s) confined in the custody of the Federal Bureau of Prisons. This material is being returned in accordance with the Bureau of Prisons appropriations act, formerly known as the Ensign Amendment, which states:

> **None of the funds made available in this Act to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity.**

The enclosed material(s) contain(s) sexually explicit information or material or features nudity and is being returned to you as explained above. If you desire an independent review of this action you may write Regional Director [Name, Address] within 20 days of receipt of this letter.


Sincerely,



Warden

```
                                                    PS 5266.10
                                                    1/10/2003
                                                    Attachment D
```

NOTIFICATION TO INMATE OF **RETURN** OF PUBLICATION OR MATERIALS
(TO BE USED WHEN RETURNING A PUBLICATION UNDER SECTION 7.a.(8) OF THIS PROGRAM STATEMENT)


Inmate: _____

Register Number: _____

Institution: _____


RE: _____    Issue: _____


The mail room has returned the above mentioned publication/material to the publisher/sender in accordance with the Bureau of Prisons appropriations act, formerly known as the Ensign Amendment, which states:

> **None of the funds made available in this Act to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity.**

If you are dissatisfied with this decision, you may file an appeal through the Bureau of Prisons' Administrative Remedy Procedure, Bureau of Prisons' Program Statement 1330.13.  A member of your institutional unit team may be able to provide assistance or answer any questions you may have in filing your appeal.


_____              _____
Signature/Title                          Date