UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYRON TERESHCHUK, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 06-1031(RWR) |
| | ) |
| BUREAU OF PRISONS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

In this suit brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Defendant moved for summary judgment on May 31, 2007, Plaintiff opposed that Motion on or around June 29, 2007, and Defendant filed its reply memorandum on July 30, 2007. On August 28, 2007, this Court issued an Order noting that "although it appears that [D]efendant has searched for records in places where such records likely would be found," the supporting declarations provided limited explanation as to the specifics of the search. R. 39, Order, at 1. Accordingly, the Court ordered Defendant to "supplement its submission to address the means by which agency staff conducted the searches for records responsive to [P]laintiff's FOIA requests." Id. at 2.

Defendant herein responds to the Court's August 28, 2007 Order, and respectfully avers that the supporting declaration attached hereto clearly and in a non-conclusory fashion evidences that Defendant fully complied with its obligations under the FOIA in its search for records responsive to Plaintiff's FOIA request. Thus, Defendant respectfully reiterates its request that the Court grant Defendant summary judgment, and dismiss this suit with prejudice. A proposed

Order consistent with this requested relief is attached to Defendant's Motion for Summary Judgment [R. 30].

**ARGUMENT**

**I.    STANDARD OF REVIEW**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F.Supp.2d 146, 158 (D.D.C. 2004); Allen v. U.S. Secret Service, 335 F.Supp.2d 95, 97 (D.D.C. 2004); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).   The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'"  Kronberg v. Department of Justice, 875 F. Supp. 861, 869 (D.D.C. 1995) (quoting Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Judicial Watch, Inc., 337 F.Supp.2d at 158.  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."  Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).

Indeed, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Additionally, the search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Id.  Additionally, the mere fact that a

2

document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Ginarte v. Rice, Civil Action No. 06-2074(RWR), 2007 WL 2111039, *1 (D.D.C. July 23, 2007), quoting, Oglesby, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller v. U.S. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985); Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987), cert. denied, 445 U.S. 927 (1980). Once the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient, however, for a requester to attempt to rebut the agency affidavit with purely speculative claims. See Carney v. U.S. Department of Justice, 19 F.3d 807, 813 (1st Cir. 1994); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991).

## II.   THE AGENCY'S SEARCH

The declaration of Cheryl Magnusson demonstrates through detailed, non-conclusory averments that, in this case, the Bureau of Prisons ("BOP") engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." Oglesby, 920 F. 2d at 68.

Ms. Magnusson is a Legal Assistant at the Consolidated Legal Center located at the Federal Medical Center, Devens, Massachusetts ("FMC Devens"). See Declaration of Cheryl Magnusson, ¶ 1 (Sept. 20, 2007)(attached hereto). She has held this position since October 20, 2003. Id. As part of Ms. Magnusson's official duties, she is responsible for obtaining all records maintained and available at FMC Devens that are requested through the FOIA. Id. ¶ 2. Once she has obtained all records available and pertaining to the FOIA request, she forwards the records to the BOP's Northeast Regional Office for review, determination and distribution of records which are releaseable under FOIA.[1] Id. Ms. Magnusson's search for records responsive to Plaintiff's FOIA request are described in detail in her declaration, and below.

### A.    FOIA Request No. 2006-07880

By letter dated April 6, 2006, Plaintiff submitted a request to the BOP seeking a broad range of records as related to or regarding him including his medical and psychological records, his "Complete Inmate Central File," other BOP documents referencing Plaintiff "by name or inmate registration number," e-mail records, BOP treatment notes, and "orders and instructions to staff regarding" Plaintiff including those used to classify Plaintiff "as being convicted of a violent offense." R. 1, Pl.'s Compl., Ex. A, Privacy Act Freedom of Information Act Request; see also Magnusson Decl. ¶ 8. Plaintiff also sought records regarding psychological/psychiatric tests administered at the FMC Devens where Plaintiff was formerly incarcerated, all risk assessment reports written about prisons stored on the computers of certain BOP staff, the complete list of "favorites," "cookies," and address books on the computers of certain BOP staff,

---

[1]The BOP's justifications for its withholding determinations and other matters related to the processing of Plaintiff's FOIA requests are discussed in the BOP's Motion for Summary Judgment.

indices of all major BOP information systems, policy statements and interpretations including those not published in the Federal Register, the BOP phone directory and e-mail list, and all "district court decisions, opinions, and orders that are in the possession and control of the BOP and have been adjudicated subsequent to January 1, 1976." Id.

Upon receipt of this request, Ms. Magnusson personally made a complete copy of Plaintiff's medical record and central file which included his requested psychological, psychiatric, recreational therapy, and medical records, all emails and notes regarding Plaintiff, designation records, cultural background information, and all classification records. Magnusson Decl. ¶ 9. Ms. Magnusson also requested an X-ray technician to conduct a search for any and all X-rays of Plaintiff. Id. The technician indicated that he had a total of six films taken on November 8, 2005. Id. Ms. Magnusson was informed that, in order to approve processing, the requestor must agree to pay $5.00 per film totaling $30.00 before the X-ray department would send them to the local hospital to make copies.[2] Id. Ms. Magnusson was also informed that the requestor has the option of reviewing his x-rays by submitting a request to review them with his doctor locally. Id. Ms. Magnusson was informed that the requestor additionally has the option to have his original x-rays mailed to an outside doctor for a 30 day review with an agreement that they be returned to FMC Devens after the review period. Id.

Ms. Magnusson also interviewed Dr. James Fletcher regarding the contents of Plaintiff's FOIA request. Id. Dr. Fletcher stated that there are no Bureau guidelines for treatment of mental health inmates. Id. Dr. Fletcher indicated that he uses the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), as a general reference. Id. The DSM-IV is a

---

[2]There is no indication in the record that Plaintiff has paid this fee.

manual that Mental Health Professionals use when working with patients in order to better understand their illness and potential treatment. Id. The DSM-IV is published by the American Psychiatric Association. Id. The DSM-IV is not part of a BOP system of records, therefore, was not disclosed. Id.

Dr. Fletcher emailed Ms. Magnusson the shells of unsigned documents in a Wordperfect format that were in inmate Tereshuck's mental health records provided. Id. Ms. Magnusson also interviewed Dr. Fletcher as well as three other physicians, each of them stating that there is no such thing as a risk assessment about a prison because risk assessments are about the analysis of an individual not about a place. Id. Ms. Magnusson interviewed Dr. Sonnega regarding Plaintiff's request for all psychological/psychiatric tests and risk assessment instruments administered at FMC Devens to prisoners undergoing evaluation. Id. Dr. Sonnega explained that these tests come from an actual machine into which answers to questions are typed and from which a resulting conclusion is printed out. Id. Dr. Sonnega indicated that there is no format that can be provided. Id. Dr. Sonnega stated that Plaintiff did take one of the tests that he requested, the MMPI-2, which were provided to the Northeast Regional Office. Id. There is no system of records that exists in the Bureaus of Prisons for email lists, district court decisions, opinions and orders that have been adjudicated since 1976, or Risk Assessments about prisons. Id.

The BOP responded to Plaintiff's April 6, 2006 FOIA request (FOIA Request No. 2006-07880) on August 8, 2006. See R. 30, Def.'s Mot. Summ. J., Declaration of Kathleen Quigley ("Quigley Decl. I"), ¶ 2 (March 15, 2007). Of the two hundred twenty-three (223) pages of records responsive to Plaintiff's request, one hundred seventy-one (171) pages were released in entirety and seven pages were released with redactions. The redacted information from the

seven (7) pages and the forty-five (45) pages withheld in entirety contained third-party information and internal BOP information. R. 30, Quigley Decl. I, Ex. 1 (attached thereto). Accordingly, the information was withheld pursuant to 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(F). Id.

>   B.   *FOIA Request No. 2006-07887*

Plaintiff submitted a second FOIA request to the BOP on or around May 16, 2006. R. 30, Quigley Decl. I ¶ 3. He requested information related to his classification, psychiatric and psychological records, instructions to another federal inmate as to the inmate purportedly providing false testimony against the Plaintiff, records pertaining to staff instructions to keep Plaintiff classified as "medically unassigned," records pertaining to the confiscation and rejection of Plaintiff's mail, and "non personnel records" including the BOP's remedial indices, BOP instructions related to the confiscation and rejection of mail, videos and similar records used for training BOP psychiatrists and psychologists, the names and addresses of licensing boards to which certain BOP employees belong, and records disclosing the criteria used by BOP in classifying federal inmates as violent. R. 30, Quigley Decl. I, Ex. 2; see also Magnusson Decl. ¶ 11.

Upon receipt of this request, it was determined that Plaintiff's requests for psychiatric, psychological and medical records were already provided in response to FOIA number 2006-07880. Id. ¶ 12. All records pertaining to mail were provided in response to FOIA number 2006-07648 (see below). Id. Ms. Magnusson conducted a search for records regarding an alleged false testimony by another inmate through Plaintiff's central file and contacts with the Special Investigative Section ("SIS") Department. Id. No records were found in Plaintiff's

central file pertaining to this request.  Id. The SIS contact also indicated that there were no records pertaining to this request.  Id.  Plaintiff's request for the complete BOP Administrative Remedy indices was too broad, and therefore, a search could not be conducted.  Id.; see also R. 30, Quigley Decl. I, Ex. 3, Letter from Henry J. Sadowski to Myron Tereshchuk, March 14, 2007.

Ms. Magnusson  interviewed the Employee Services Specialist regarding Plaintiff's request for all manual, videos and similar records used for training BOP psychiatrists and psychologists.  Magnusson Decl. ¶ 12.  The Employee Services Specialist indicated that there are no manuals, videos or records pertaining to this request.  Id.  Ms. Magnusson also requested the licensing information of Dr. Haas, Dr. Riggs, Dr. Taylor, Dr. Fletcher and Dr. Sonnega from the Quality Risk Manager.  Id.  The Risk Manager provided Ms. Magnusson with the licensing information for these Doctors (i.e., the names and addresses of the licensing boards) and this information was provided to the Northeast Regional Office.  Id.   Ms. Magnusson personally conducted a search for records on the criteria the BOP uses to classify federal inmates and found Program Statement 5100.087, Security Designation and Custody Classification Manual (108 pages).  Id.  The program statement was not turned over to the Northeast Regional Office because Plaintiff can review it through local access procedures in the law library.  Id.; see also Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 70 (D.C. Cir. 1990), quoting Tax Analysts v. U.S. Dept. Of Justice, 845 F.2d 1060, 1065-67 (D.C. Cir. 1988)("An agency 'need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access.'").

The BOP responded to Plaintiff's second FOIA request on March 14, 2007 informing Plaintiff that, as to records related to his classification and correspondence, he could request a local review of his central file by contacting staff at his institution. R. 30, Quigley Decl. I, Ex. 3, Letter from Henry J. Sadowski to Myron Tereshchuk, March 14, 2007. In its response, the BOP also noted that it had already provided Plaintiff's psychiatric and psychological records in response to a previous request, and informed Plaintiff that release of records related to another inmate were subject to the Privacy Act (if, in fact, the record Plaintiff requested even existed) . Id. As to Plaintiff's request for "non personnel records," the BOP responded to Plaintiff that he had to provide a more specific description of the types of records he was seeking related to the administrative remedy indices. Id. Without such, a reasonable search could not be completed. Id. The BOP additionally produced the requested licensing board information (i.e., the names and addresses), noted that no records were found in response to Plaintiff's request for training videos, and informed Plaintiff that the remaining material including Program Statements could be obtained locally at FCI Cumberland. Id.

   C.  *FOIA Request No. 2006-07648*

Plaintiff submitted a third FOIA request to the BOP on or around May 31, 2006. R. 30, Quigley Decl. I, Ex. 2. He requested his mail, a complete list of banned materials that federal prisoners are not permitted to receive, instructions to BOP staff related to incoming and outgoing mail to federal prisoners, names and addresses of all persons requesting information about Plaintiff and access to the information provided to those individuals, BOP's legal volume of the Nuremberg Code and the Helsinki Agreement (as well as interpretations of these international laws regarding the treatment of prisoners), a complete volume set of the Bankruptcy Reporter,

the Federal Rules Decisions, the Federal Appendix, a copy of a "recreational therapy release form" that Plaintiff refused to sign, and an attendance form which Plaintiff also refused to sign. Id.; see also Magnusson Decl. ¶ 5.

Upon receipt of this request, Ms. Magnusson personally conducted a search through Plaintiff's central file and medical file. Magnusson Decl. ¶ 6. Ms. Magnusson made a copy of all of the mail rejections maintained in Plaintiff's central file. Id. Further, Ms. Magnusson requested that the institution mailroom staff conduct an additional search for any and all mail rejections related to Plaintiff. Id. The mailroom staff turned over the same rejections that were maintained in Plaintiff's central file. Id. As the result of her inquiry on whether there are any lists of books that are banned by the BOP, Ms. Magnusson was informed that there is no such list and that each item is reviewed and decided upon arrival at the institution mailroom. Id. Ms. Magnusson requested that the SIS Department determine whether Plaintiff was on restricted mail status and was informed that he was not. Id.

Ms. Magnusson personally conducted a search for Program Statements that reference mail procedures used by staff in the BOP and found the following four Program Statements: PS 5800.10, Mail Management Manual (490 pages), PS 5625.11, Correspondence, (117 pages), PS 5800.13, ISM Manual (104 pages), PS G50001.04, Correctional Programs (199 pages). These program statements were not turned over to the Northeast Regional Office because Plaintiff can review them through local access procedures in the law library. Id.; see also Oglesby, 920 F.2d at 70, quoting Tax Analysts, 845 F.2d at 1065-67.

Ms. Magnusson searched Plaintiff's medical record for the recreational therapy consent form that he allegedly refused to sign and found no record with this information. Id.

Ms. Magnusson interviewed staff who would have personal knowledge on the matter and was informed by one that she had no recollection of the therapy form and was informed by another that Plaintiff was independent and did not need recreational therapy, therefore, no refusal form exists for him.  Id.

Ms. Magnusson also conducted a search through Plaintiff's medical records for the attendance form he purportedly refused to sign.  Id.  A document with signatures of staff present called the "Master Treatment Plan" was provided for processing, but Ms. Magnusson found no document called an "attendance form."  Id.  Ms. Magnusson nevertheless made a copy of the three page "Master Treatment Plan" form and provided it to the Northeast Regional Office for processing.  Id.

There is no system of records that exists in the BOP for legal volumes containing the Nuremberg Code and the Helinski Code or the Bankruptcy Reports, the Federal Rules Decisions and the Federal Appendix, therefore, a search was not conducted for these requests.  Id.  Ms. Magnusson conducted a search through the BOP's FOIA logbook at FMC Devens and found no requests regarding Plaintiff.  Id.

The BOP responded to Plaintiff's third FOIA request on March 14, 2007.  R. 30, Quigley Decl. I, Ex. 4, Letter from Henry J. Sadowski to Myron Tereshchuk, March 14, 2007.  Plaintiff was informed that he would receive eighteen (18) pages in their entirety but was also advised that ten (10) pages were being withheld in their entirety pursuant to 5 U.S.C. § 552(b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).[3]  R. 30, Quigley Decl. I ¶ 8; see also Vaughn

---

[3] Ultimately, only Exemption 2 and 5 were applied to withheld information.  See R. 30, Vaughn Index for FOIA #2006-07648.

Index for FOIA #2006-07648. Plaintiff was also informed that the BOP does not maintain a list of "banned" materials as each item is reviewed upon arrival at the respective institution. Id., Ex. 4, Sadowski Ltr. Plaintiff was also reminded that any non-law enforcement inquiries pertaining to specific requests for information about Plaintiff would be maintained in Plaintiff's central file and that he could make arrangements with his local institution to review that file. Id. As to his request for legal research volumes, the BOP directed Plaintiff to his facility's law library for available materials. Id.

## CONCLUSION

The adequacy of an agency's search is judged by a standard of "reasonableness" and depends on the facts of each case. Mogenhan v. Dept. of Homeland Security, Civil Action No. 06-2045(EGS), 2007 WL 2007502, *2 (D.D.C. July 10, 2007). As indicated above, "[a]n agency may demonstrate the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits ... in good faith." Id. (citation omitted). The declaration of Ms. Magnusson clearly evidences that the BOP undertook a reasonable search for records responsive to Plaintiff's FOIA request. Accordingly, for this reason and those presented in Defendant's Motion for Summary Judgment and Reply, Defendant respectfully requests judgment in its favor and dismissal of this suit with prejudice.

Date: September 24, 2007

Respectfully Submitted,

/s/ Jeffrey A. Taylor /dch

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell

_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District
 of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing ***Defendant's Supplemental Memorandum in Support of Its Motion for Summary Judgment*** was served by the Court's Electronic Case Filing System and by postage prepaid, first class mail to:

Myron Tereshchuk, pro se
Reg. No. 47510-083
Federal Correctional Institution
Cumberland, Maryland 21502

on this 24th day of September, 2007.

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney